**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**PAULINE FRANCIS,**

    **Plaintiff,**

   **-against-**

**WYCKOFF HEIGHTS MEDICAL**
**CENTER AND BETTY O'HAGAN,**

    **Defendants.**

**No. 13-cv-2813 (DLI) (MDG)**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Barbara E. Hoey
Alison L. MacGregor
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

UNDISPUTED FACTS .........................................................................................................5

ARGUMENT .........................................................................................................................5

I.      STANDARD FOR SUMMARY JUDGMENT .................................................5

II.     PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS SHOULD BE
DISMISSED ...........................................................................................................6

     A.     Plaintiff's Burden Of Proof...............................................................6

     B.     Both The Disparate Treatment and Failure to Accommodate Claims
Fail Because Wyckoff Did Not Have "Notice" of A Disability ............................7

     C.     The Failure to Accommodate Claims Should Be Dismissed As Plaintiff
Never Requested An Accommodation .................................................11

     D.     The Claim of Unlawful Termination Must Fail, As Plaintiff Could Not
Perform An Essential Function of Her Job ...........................................12

     E.     Alternatively, Plaintiff  Cannot Show That She Was Terminated
"Because of" Her Disability ...............................................................19

III.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OF THE NYSHRL AND NYCHRL CLAIMS ................................24

IV.    THE AFTER-ACQUIRED EVIDENCE DOCTRINE BARS MS. FRANCIS
FROM OBTAINING FRONT PAY, REINSTATEMENT, AND BACK PAY .........24

CONCLUSION...........................................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines Inc.*,
  239 F.3d 456 (2d Cir. 2001) ............................................................................5

*Ali v. Mount Sinai Hosp.*,
  No. 92 Civ. 6129 (JGK)(NG), 1996 U.S. Dist. LEXIS 8079 (S.D.N.Y. June 12,
  1996) ..............................................................................................................19

*Alston v. Microsoft Corp.*,
  852 F. Supp. 2d 725 (S.D.N.Y. 2012) .......................................................16, 19

*Amato v. St. Lukes Episcopal Hosp.*,
  987 F. Supp. 523 (S.D. Tex. 1997) ..............................................13, 14, 15, 18

*Brown v. The Pension Bds.*,
  488 F. Supp.2d 395 (S.D.N.Y. 2007) ...............................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..........................................................................................6

*Chernoff v. City of New York*,
  06-CV-2897 (CDS) (CLP), 2008 U.S. Dist. LEXIS 77869 (E.D.N.Y. Sept. 10,
  2008) ..................................................................................................................6

*Chertkova v. Conn. Gen. Life Ins. Co.*,
  92 F.3d 81 (2d Cir. 1996) ................................................................................19

*Costello v. St. Francis Hosp.*,
  258 F. Supp. 2d 144 (E.D.N.Y. 2003) .............................................................23

*Desir v. Bd. of Coop. Educ. Servs. (BOCES)*,
  No. 07-CV-1994 (RRM) (ARL), 2011 U.S. Dist. LEXIS 32751 (E.D.N.Y. Mar.
  29, 2011) ..........................................................................................................20

*Edwards v. Elmhurst Hosp. Ctr.*,
  No. 07-CV-2452 (RMB) (LB), 2009 WL 6683365 (E.D.N.Y. Sept. 17, 2009) ..................22, 23

*Feeley v. New York City Police Dep't*,
  No. 97-CV-02891-RJD, 2001 WL 34835239 (E.D.N.Y. Sept. 4, 2001) ..............................16, 17

*Frankel v. City of New York*,
  No. 06 Civ 5450 (LIS) (DFE), 2009 U.S. Dist. LEXIS 14864 (S.D.N.Y. Feb.
  25, 2009) ............................................................................................................5

ii

*Gaston v. Bellingrath Gardens Home, Inc.*,
   167 F.3d 1361 (11th Cir. 1999) ........................................................................ 12

*Giordano v. City of New York*,
   274 F.3d 740 (2d Cir. 2001) ............................................................................ 24

*Gomez v. Pellicone*,
   986 F. Supp. 220 (S.D.N.Y. 1997) .................................................................. 23

*Greene v. Coach*,
   218 F. Supp. 2d 404 (S.D.N.Y. 2002) ............................................................ 24

*Guice-Mills v. Derwinski*,
   772 F. Supp. 188 (S.D.N.Y. 1991) .............................................................. 15, 19

*Hunt-Watts v. Nassau Health Care Corp.*,
   No. 12-CV-1815 (PKC), 2014 WL 4185149 (E.D.N.Y. Aug. 21, 2014) ................ 16

*Jackson v. Veterans Admin.*,
   22 F.3d 277 (11th Cir. 1994) ........................................................................ 18, 19

*James v. New York Racing Ass'n*,
   233 F.3d 149 (2d Cir. 2000) ............................................................................ 23

*Jones v. Yonkers Public Schools*,
   326 F. Supp. 2d 536 (S.D.N.Y. 2004) ............................................................ 23

*Joseph v. Leavitt*,
   465 F.3d 87 (2d Cir. 2006) ................................................................................ 5

*Kanhoye v. Altana Inc.*,
   686 F. Supp. 2d 199 (E.D.N.Y. 2009) ............................................................ 22

*Lama v. Consol. Edison Co.*,
   No. 98-CV-5084 (VG), 1999 U.S. Dist. LEXIS 16966 (E.D.N.Y. Oct. 18, 1999) ............ 19

*Lewis v. New York City Police Dep't*,
   908 F. Supp. 2d 313 (S.D.N.Y. 2012) .......................................................... 13, 14

*Lizardo v. Denny's, Inc.*,
   270 F.3d 94 (2d Cir. 2001) ................................................................................ 5

*Lyons v. Legal Aid Society*,
   68 F.3d 1512 (2d Cir. 1995) .............................................................................. 7

*Mazza v. Bratton*,
   108 F. Supp. 2d 167 (E.D.N.Y. 2000) ............................................................ 12

iii

*McBeth v. Gabrielli Truck Sales, Ltd.*,
  768 F. Supp. 2d 396 (E.D.N.Y. 2011) .........................................................................24

*McCoy v. Morningside At Home*,
  No. 11 Civ 2575 (LTS), 2014 WL 737364 (S.D.N.Y. Feb. 25, 2014) ..............................6, 8, 10

*McKennon v. Nashville Banner Pub. Co.*,
  513 U.S. 352 (1995) ...................................................................................................24

*McMillan v. City of New York*,
  711 F.3d 120 (2d Cir. 2013) ........................................................................................14

*McPherson v. New York City Dep't of Educ.*,
  457 F.3d 211 (2d Cir. 2006) ........................................................................................22

*Medlin v. Rome Strip Steel Co.*,
  294 F. Supp. 2d 279 (N.D.N.Y. 2003) ..........................................................................7

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985) .........................................................................................5

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
  715 F.3d 102 (2d Cir. 2013) .........................................................................................6

*Mincey v. Univ. of Rochester*,
  262 Fed. Appx. 319 (2d Cir. 2008) ..............................................................................22

*Morris v. Town of Islip*,
  No. 12-CV-2984, 2014 WL 4700227 (E.D.N.Y. Sept. 22, 2014) ...................................10

*Norville v. Staten Island Univ. Hosp.*,
  196 F.3d 89 (2d Cir. 1999) ..........................................................................................20

*O'Reilly v. Consolidated Edison Co. of New York*,
  172 Fed. Appx. 20 (2d Cir. 2006) ...............................................................................25

*Ozemebhoya v. Edison Parking Corp.*,
  No. 02-cv-10057, 2007 U.S. Dist. LEXIS 66552 (S.D.N.Y. Sept. 7, 2007) ...................22

*Pacenza v. IBM Corp.*,
  2009 U.S. Dist. LEXIS 29778 (S.D.N.Y. Apr. 2, 2009), *aff'd*, 363 Fed. Appx.
  128 (2d Cir. 2010) .......................................................................................................7

*Piccolo v. Wal-Mart*,
  No. 11-CV-0406, 2012 U.S. Dist. LEXIS 75991 (W.D.N.Y. May 30, 2012) ...................10

*Pierce v. Highland Falls-Fort Montgomery Central Sch. Dist.*,
  No. 08-CIV-1948 (RKE), 2011 WL 4526520 (S.D.N.Y. Sept. 28, 2011) ........................14

iv

*Reeves v. Johnson Controls World Servs., Inc.*,
    140 F.3d 144 (2d Cir. 1998) ................................................................................ 6

*Reeves v. Sanderson Plumbing*,
    530 U.S. 133 (2000) ........................................................................................... 21

*Rivera v. Apple Indus. Corp.*,
    148 F. Supp. 2d 202 (E.D.N.Y. 2001) ............................................................... 12

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
    369 F.3d 113 (2d Cir. 2004) ................................................................................ 6

*Roge v. NYP Holdings, Inc.*,
    257 F.3d 164 (2d Cir. 2001) ................................................................................ 6

*Romanello v. Intesa Sanpaolo, S.p.A*,
    976 N.Y.S.2d 426 (Ct. App. N.Y. 2013) ........................................................... 17

*Romanello v. Shiseido Cosmetics*,
    No. 00CIV.7201 (JGK), 2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002) ................. 13

*Russell v. County of Nassau*,
    696 F. Supp. 2d 213 (E.D.N.Y. 2010) ................................................................. 6

*Ryan v. Best Buy Co.*,
    No. 06-CV-157S, 2009 WL 3165584 (W.D.N.Y. Sept. 27, 2009) ........................ 13

*Samper v. Providence St. Vincent Med. Center*,
    675 F.3d 1233 (9th Cir. 2012) .............................................................. 13, 14, 15

*Schnabel v. Abramson*,
    232 F.3d 83 (2d Cir. 2000) ................................................................................. 5

*Shannon v. New York City Transit Authority*,
    332 F.3d 95 (2d Cir. 2003) ...................................................................... 6, 13, 16

*Sirota v. New York City Bd. of Educ.*,
    283 A.D.2d 369 (1st Dep't 2001) ............................................................... 10, 16

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. (1993) ........................................................................................... 21, 22

*Stone v. City of Mount Vernon*,
    118 F.3d 92 (2d Cir. 1997) .................................................................................. 7

*Thomsen v. Stanec*,
    785 F. Supp. 2d 20 (W.D.N.Y. 2011), *aff'd*, 483 Fed. Appx. 620 (2d Cir. 2012),
    *cert. denied*, 133 S. Ct. 931 (2013) ...................................................................... 7

v

*Vandenbroek v. PSEG Power, CT LLC*,
  356 F. App'x 457 (2d Cir. 2009) ................................................................ 14

*Vazquez v. Southside United Hous. Dev. Fund Corp.*,
  No. 06-CV-5997, 2009 WL 2596490 (E.D.N.Y. Aug. 21, 2009) .................................. 12

*Watson v. Arts & Entertainment Television Network*,
  2008 U.S. Dist. LEXIS 24059 (S.D.N.Y. Mar. 26, 2008), *aff'd*, 352 Fed. Appx.
  475 (2d Cir. 2009) ........................................................................ 8

*Williams v. Palladia, Inc.*,
  No. 07-CV-7720 (CM), 2009 U.S. Dist. LEXIS 15516 (S.D.N.Y. Feb. 10,
  2009) .................................................................................... 19

*Young v. Westchester County Dep't of Soc. Serv.*,
  57 Fed. Appx. 492 (2d Cir. 2003) ......................................................... 7

**Statutes**

28 U.S.C. § 1367(c)(3) ....................................................................... 24

42 U.S.C. § 12111(10)(A) .................................................................... 17

42 U.S.C. § 12111(B)(i)-(iv) ................................................................ 18

29 C.F.R. § 825.216 ......................................................................... 25

29 C.F.R. § 1630.2(n) ....................................................................... 13

Fed R. Civ. P. 56(c) ........................................................................ 5

N.Y.C. Admin. Code § 8-107[15][b] .......................................................... 17

Defendants Wyckoff Heights Medical Center ("WHMC," the "Hospital" or "Wyckoff") and Betty O'Hagan ("Ms. O'Hagan,"), submit the following Memorandum of Law in Support of their Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Pauline Francis, a former Emergency Department Technician ("EDT") at Wyckoff, was terminated in July 2011 – after years of progressive discipline and poor evaluations – because she simply did not come to work.  More specifically, Ms. Francis, who worked on the night shift in Wyckoff's busy Emergency Department ("ED"), was chronically absent – calling in sick (and sometimes just failing to show up for work) on an extraordinary number of work shifts.  Indeed, during one approximately two month period in 2011, Plaintiff was absent for 41 out of 70 scheduled work shifts.  A busy hospital like Wyckoff cannot "accommodate" an employee who does not show up for work, night after night, leaving other employees to work short-staffed and patients in its ED waiting to be cared for without proper assistance.

The Complaint alleges that Plaintiff had breast cancer, and that these absences were related to treatment for that cancer.  (Compl., at ¶ 2.)[1]  The Complaint also accuses Defendants of failing to accommodate and discriminating against Ms. Francis.  (*Id.*, at ¶¶ 33-39.)

Discovery has revealed these claims to be utterly bereft, both factually untrue and legally meritless.  Plaintiff was treated for cancer **in 2002** – 9 years before she was terminated. Plaintiff concedes that in 2010 and 2011 (the years before her termination), she was not being treated for breast cancer and never informed Defendants that she needed an accommodation for cancer treatment.  Thus, her many absences, contrary to the Complaint, were not for treatment of cancer.

---

[1] "Compl." refers to Plaintiff's Complaint dated May 10, 2013.

More seriously, Plaintiff has also conceded that she submitted false medical documentation to Wyckoff in 2009 to justify a medical leave, containing untrue statements that she was having chemotherapy – **which she was not**. Thus, Plaintiff took a leave under false pretenses and defrauded her employer. This alone would have been grounds to fire Plaintiff.

As to the accommodation claim, Ms. Francis concedes that she simply never requested any accommodation from Wyckoff. Each time Plaintiff returned from a leave – including the 2009 leave she fraudulently obtained – Ms. Francis submitted a note from her doctor stating she was fit for full duty, with no restrictions. In addition, when Plaintiff underwent her annual physical each year at Wyckoff, she reported no medical ailments that would interfere with her work performance. Plaintiff also admits that she never asked her manager Defendant O'Hagan or Human Resources for any sort of job accommodation, but repeatedly told them she was able to do her job. Thus, the failure to accommodate claim cannot stand, as Wyckoff was never asked to accommodate Plaintiff.

It is also undisputed that Ms. Francis had an abysmal attendance record and that this chronic poor attendance led to her termination. In addition to the multiple leaves Plaintiff took in 2009, 2010 and 2011 – when Ms. Francis was not on leave, she basically did not show up for work. Contrary to the Complaint, the discipline did not increase in frequency with the hiring of Ms. O'Hagan in 2008. (Compl. ¶ 19.) Plaintiff was disciplined repeatedly, by multiple different managers from 2003 onward, for excessive absences, "sick" calls, no shows, late arrivals and failures to swipe out. Ms. O'Hagan was not hired until September 2009. The discipline only escalated in 2011 because Plaintiff's misconduct became more egregious. Ms. Francis disappeared from her job for over two months between March and April of 2011, failing to even call Wyckoff

to tell the Hospital she would be out.  She missed a total of 41 out of 70 scheduled shifts.  As a result, Ms. Francis was given a warning.

In June 2011, Ms. Francis continued to miss work, come in late, and fail to swipe out.  Thus, she was suspended and warned she would be terminated if the absences continued.  In July 2011, she was out again.  At that point, given her record and her failure to improve, Ms. Francis was terminated.  This termination was not discriminatory or unlawful.  Ms. Francis was simply not fulfilling an essential requirement of her job – which was to show up for work.  This was not behavior which could be accommodated or tolerated.

There is no evidence that Wyckoff or Ms. O'Hagan discriminated against Ms. Francis because of her 2002 cancer or any other condition (as Plaintiff now alleges she had lymphedema).  Before her termination, Ms. Francis admits she never discussed the cancer or lymphedema with Ms. O'Hagan.  Plaintiff also admits that Ms. O'Hagan never said anything negative to her about cancer or any other illness.

There are multiple fatal flaws in Plaintiff's discrimination claims:

- First, Plaintiff cannot prove Defendants had notice that she had a "disability."  Ms. Francis admits that she never told anyone at Wyckoff that she suffered from lymphedema or that symptoms of breast cancer prevented her from doing her job, or that she needed any accommodation.  Also, in 2009, 2010 and 2011, Plaintiff submitted doctor's notes stating she was fully fit for duty.

- Second, Plaintiff has repeatedly admitted that she never asked for any accommodation from Wyckoff.  She never asked for light duty, never told anyone she wanted a different position, never told anyone she needed days off or a special schedule, and never told anyone that she wanted a part time position.  These admissions are fatal to Plaintiff's failure to accommodate claim.

- Third, Plaintiff cannot show that she could perform one of the essential functions of her job, which was to maintain acceptable attendance.  Regular, predictable attendance is an essential function of almost every job – but it is particularly critical for hospital employees, whose job involves direct patient care.  In a hospital emergency room, especially on the night shift, an employee like Ms. Francis must be "present" in order to do that job.  Ms. Francis admits she failed to meet the Hospital's attendance standards.

- Fourth, if the Court were to reach the question of whether Plaintiff's requested accommodation was reasonable or an undue hardship – it would find for Defendants.  Ms. Francis asks this Court to find that Wyckoff should have accommodated her by allowing her to take on unlimited number of absences.  This would cause Wyckoff an undue hardship.  When Ms. Francis was out, Defendants had to scramble to get other EDTs to work overtime, stretching the Hospital's already thin budget.  Often the Wyckoff Emergency Department ended up working short-staffed, burdening the rest of the ED staff.  Allowing these types of unscheduled, excessive absences would be an undue hardship on Wyckoff.

- Finally, Plaintiff cannot show that she was terminated because of a "disability" or that there was any bias against her based on a disability.  Ms. Francis admits she never discussed her cancer with Defendant O'Hagan, and that no one in Wyckoff management ever said anything negative or discriminatory concerning her alleged "disabilities."  There is also no evidence of disparate treatment of Ms. Francis.  In fact, she was absent more than the Hospital policy allowed, and could have been disciplined more harshly – but she was not. The absences were 'tolerated' and she was told to improve. She was only fired after the absences continued, and there seemed to be no end in sight.

Moreover, facts have come to light in discovery which call into serious question Plaintiff's credibility and bar her recovery of back pay or reinstatement.  There is first Plaintiff's admission that she submitted false medical certifications to Wyckoff in 2009 requesting leave because she was having chemotherapy - **when she was not**. This was a serious offense.  Had Wyckoff known the medical certifications were false, it would have terminated Ms. Francis for her dishonesty and fraud.

Wyckoff has also learned during this lawsuit that Ms. Francis was working at a second job while at Wyckoff, and that Plaintiff reported for work at this second job <u>while she was on leave from Wyckoff</u>, and on <u>a number of dates when she had called out "sick"</u> to Wyckoff.  This was dishonest, a falsification of sick time, and also would have been grounds for Plaintiff's termination.

Thus, if the Complaint is not dismissed in total, this Court should find that Plaintiff is barred from reinstatement, or recovery of front pay or back pay, under the after-acquired evidence doctrine.

## UNDISPUTED FACTS

For a complete recitation of the undisputed facts, Defendants respectfully refer the Court to Defendants' Local Rule 56.1 Statement ("56.1") submitted herewith.

## ARGUMENT

## I.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be granted if the moving party shows that "[t]here is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Frankel v. City of New York*, No. 06 Civ 5450 (LIS) (DFE), 2009 U.S. Dist. LEXIS 14864, at *7-8 (S.D.N.Y. Feb. 25, 2009).  In the summary judgment context, a fact is material "if it might affect the outcome of the suit under the governing law;" and "[a]n issue of fact is 'genuine' if the evidence  is such that a reasonable jury could return a verdict for the nonmoving party." *Frankel*, 2009 U.S. Dist. LEXIS 14864, at *3 (internal quotations omitted).

The Second Circuit has repeatedly recognized that summary judgment is appropriate in employment discrimination cases, notwithstanding their fact-intensive nature. *Abdu-Brisson v. Delta Air Lines Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[T]he salutary purposes of summary judgment . . . apply no less to discrimination cases than to . . . other areas of litigation.").  Thus, in a discrimination case, a defendant's motion for summary judgment should be granted if, based on the record as a whole, the plaintiff cannot satisfy her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her]." *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000). *See also Joseph v. Leavitt*, 465 F.3d 87, 93-94 (2d Cir. 2006); *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103-04 (2d Cir. 2001).

## II.   PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS SHOULD BE DISMISSED

### A.   Plaintiff's Burden Of Proof

In order to establish a *prima facie* claim of discrimination under the ADA, Ms. Francis must show:  (1) that her employer is subject to the ADA; (2) that she is disabled within the meaning of the ADA; (3) that she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) that she suffered an adverse employment action because of the disability.  *See Shannon v. New York City Transit Authority*, 332 F.3d 95, 99 (2d Cir. 2003).  The Federal Rules … "mandate the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which the party will bear the burden of proof at trial." *McCoy v. Morningside At Home,* No. 11 Civ. 2575 (LTS), 2014 WL 737364 (S.D.N.Y. Feb. 25, 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001); *Russell v. County of Nassau*, 696 F. Supp. 2d 213, 231 (E.D.N.Y. 2010); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102 (2d Cir. 2013).

Claims of discrimination under the ADA, NYSHRL, and the NYCHRL are also analyzed under the same standard which place the burden of proof squarely on plaintiff to demonstrate that she has a disability, that she can perform the essential functions of the job, and that defendants unlawfully discriminated against her because of that disability. *Chernoff v. City of New York*, 06-CV-2897 (CDS) (CLP), 2008 U.S. Dist. LEXIS 77869, at *21 n.8 (E.D.N.Y. Sept. 10, 2008) (citations omitted) (granting summary judgment to defendants dismissing New York State and City disability discrimination claims, on same grounds as federal claims).[2]

---

[2] *See also Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149-50, 156 n.9 (2d Cir. 1998); *Shannon,* 332 F.3d at 103; *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118, n.1 (2d Cir. 2004).

**B.      Both The Disparate Treatment and Failure to Accommodate Claims Fail Because Wyckoff Did Not Have "Notice" of A Disability**

To establish a *prima facie case* of failure to provide a reasonable accommodation under the ADA, a plaintiff must show that:  (1) she has a disability protected by the statute; (2) she is otherwise qualified for her position; (3) the employer had notice of her disability; and (4) the employer refused to provide a reasonable accommodation, despite such notice.  *Stone v. City of Mount Vernon,* 118 F.3d 92, 96-97 (2d Cir. 1997); *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir. 1995).

The courts have recognized time and again that for a plaintiff to show that she suffered an adverse employment action because of a disability, the employer must have knowledge of the alleged disability.  *See Pacenza v. IBM Corp.*, 2009 U.S. Dist. LEXIS 29778 (S.D.N.Y. Apr. 2, 2009), *aff'd*, 363 Fed. Appx. 128 (2d Cir. 2010) (granting summary judgment where plaintiff could not establish that his employer knew of his disability); *Thomsen v. Stanec*, 785 F. Supp. 2d 20 (W.D.N.Y. 2011), *aff'd*, 483 Fed. Appx. 620 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 931 (2013) (dismissing disability discrimination claim, as plaintiff never notified his employer of disability).

Similarly, an employer who does not have notice of an employee's disability cannot be faulted for failing to "accommodate" that employee.  *Medlin v. Rome Strip Steel Co*., 294 F. Supp. 2d 279, 292 (N.D.N.Y. 2003) ("An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations") (*citing Beck v. Univ. of Wis. Bd. Of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996)); *see also Young v. Westchester County Dep't of Soc. Serv*., 57 Fed. Appx. 492, 494 (2d Cir. 2003) (explaining that an employer "was not on notice that it was obligated to comply with the ADA's requirements" when physicians' notes indicated no accommodation would be necessary.)

### 1.    Knowledge of Prior Leaves Does Not Equal Notice of A "Disability"

Wyckoff does not dispute Ms. Francis was treated for breast cancer in 2002. However, that was <u>nine years</u> before she was terminated.  (56.1 ¶¶ 9, 82, 221, 224.)  More importantly, on multiple occasions after anytime Plaintiff submitted medical documentation to Wyckoff stating she was cleared for "<u>full duty</u>" and had no medical impairment which would interfere with her ability to do her job.  *See, e.g.*, 56.1 ¶¶ 103, 132, 133, 135, 139, 155, 156, 166, 195, 202.

The law recognizes that Wyckoff's knowledge of Plaintiff's 2002 cancer, or her prior medical leaves, does not equate to knowledge that she had a "disability."  *See McCoy v. Morningside At Home*, 2014 WL 737364, at *5.  Even when an employer is aware of some impairment or a history of leaves, a plaintiff must still show that the employer was aware of an <u>actual disability</u> in order to establish a claim under the ADA.  Thus, courts have dismissed claims where an employer was aware of some medical condition, but was never informed by the employee of a disability that interfered with job performance. *Watson v. Arts & Entertainment Television Network*, 2008 U.S. Dist. LEXIS 24059, at *39-41 (S.D.N.Y. Mar. 26, 2008), *aff'd*, 352 Fed. Appx. 475 (2d Cir. 2009); *McCoy*, 2014 WL 737364, at *4 (granting summary judgment to employer where employer was aware plaintiff took a leave, but was not "on notice" of a condition rising to the level of a disability.).

This is particularly true, where, as here, **each time Ms. Francis returned from leave she submitted notes signed by her physician stating <u>that she was able to work "full duty" and "without restriction."</u>**  Also, every year when Plaintiff underwent her annual physical, Ms. Francis signed a Health Assessment form reporting no health problems, and/no restrictions on her ability to work.  (56.1 ¶¶ 102, 103, 135, 136, 155, 156; Exhs. 39, 50, 63).  Specifically:

- In Plaintiff's March 9, 2009 Annual Health Assessment, she reported no health problems. (*Id.* ¶¶ 102, 103; Exh. 39.)

- In physician's notes dated April 6, 2010 and April 22, 2010, Plaintiff's doctor stated <u>she could work "full duty," and "without restriction."</u> (*Id.* ¶¶ 132, 133; Exhs. 47, 48.)

- Plaintiff was examined by the Employee Health Service on April 22, 2010 and cleared for work on April 26, 2010. (*Id.* ¶ 134; Exh. 49.)

- On her April 28, 2010 Health Assessment, Ms. Francis again specifically checked "no" for "Muscle/Joint Pain" and did not specify any other medical problem in the space provided. (*Id.* ¶ 135, 136; Exh. 50.)

- On July 6, 2010, Ms. Francis submitted another note from her physician stating <u>she could work "full duty, no restrictions.</u>" (*Id.* ¶ 139; Exh. 53.)

- On March 18, 2011, Plaintiff also completed her Annual Health Assessment – again checking "no" for "Muscle/Joint Pain" and failing to specify any other medical problem in the space provided. (*Id.*  ¶ 155, 156; Exh. 63.)

- On March 18, 2011 Plaintiff was seen by the Employee Health Service and cleared to work. (*Id.* ¶ 154; Exh. 62.)

- On May 6, 2011, Plaintiff submitted a doctor's note clearing her for "<u>full duty</u>" and work "<u>without restriction</u>." (*Id.* ¶ 166; Exh. 66.)

- On May 6, 2011 Plaintiff was seen by the Employee Health Service and cleared to work. (*Id.* 7 ¶ 164; Exh. 65.)

- On June 29, 2011, Plaintiff's doctor wrote that Plaintiff could work "<u>full duty</u>" and "<u>without restriction</u>" on July 5. (*Id*. ¶ 195; Exh. 69.)

- On August 3, 2011, Plaintiff's doctor wrote that Plaintiff was "in good physical health" and "<u>fit to do any job without restrictions</u>." (*Id.* ¶ 202; Exh. 70.)

In addition to the above, in a statement in May 2012 when she filed her EEOC charge, Ms. Francis attested that she "was physically capable of performing her job" and that she "felt fully capable of resuming [her] duties" in May 2011. (56.1 ¶ 203; Exh. 26.)  Ms. Francis also swore under oath to the EEOC in October 2012 that she "was capable of working according to both [her] doctor and [her] own assessment of [her] physical capacity." (*Id.* ¶ 204; Exh. 27.)

"An employer may reasonably rely on the opinion of a medical professional, such as a physician's statement declaring that a plaintiff may work without restriction." *McCoy,* 2014 WL 737364, at *4; *Morris v. Town of Islip*, No. 12-CV-2984, 2014 WL 4700227, at *10 (E.D.N.Y. Sept. 22, 2014) (holding that plaintiff was not "disabled" because documentation provided by his doctor "did not list any physical restrictions or limitations."). In *McCoy*, the plaintiff alleged that her employer knew she was "disabled" due to a prior back injury. However, the court found that a note from her physician stating that she could work without restrictions upon return from a leave, as well as plaintiff's pre-employment health exam form certifying she had no "back problems," demonstrated the employer did not have notice of a disability under the ADA. 2014 WL 737364, at *5. *See also Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007) (physician's note which failed to mention mental condition did not constitute notice of disabling mental condition); *Piccolo v. Wal-Mart*, No. 11-CV-0406, 2012 U.S. Dist. LEXIS 75991, at *22-23 (W.D.N.Y. May 30, 2012) (dismissing plaintiff's ADA claims and finding no notice of disability, where plaintiff "submitted a note from his physician which stated that he had no work restrictions."). The same is true under the NYSHRL and NYCHRL. *See Sirota v. New York City Bd. of Educ.*, 283 A.D.2d 369, 370 (1st Dep't 2001) (teacher with cancer was not "disabled" where "her own physician's letters affirm[ed] her ability to work on a regular, full-time basis").

The Complaint also alleges that Plaintiff "suffered from severe pain and swelling in her left shoulder, arm, wrists and fingers, also allegedly related [to] her cancer diagnosis and treatment." (Compl., at ¶18.) However, Plaintiff admits these symptoms were never disclosed on any of her many doctors' notes certifying she could work, or her annual health assessment forms. *See* 56.1 ¶¶ 102, 103, 132, 133, 135, 139, 166, 195, 202; Exhs. 39, 47, 48, 50, 53, 66, 69, 70.) Plaintiff also concedes she never told Ms. O'Hagan that she had any of these symptoms, or that she

had trouble lifting or pushing patients.  (*Id.* ¶¶ 122-24.)  Likewise, the  night supervisor Karen

Florio, was not aware that Ms. Francis had cancer, that she was sick, or that she suffered from

these symptoms.  (*Id.* ¶ 127.)  Critically, Plaintiff admits that she never told Ms. O'Hagan, Human

Resources, or anyone in nursing management that there were symptoms related to breast cancer

that were preventing her from doing her job.  (*Id.* ¶ 124.)

Accordingly, since it is undisputed that Plaintiff (and her physician) repeatedly told

Wyckoff that she was able to work full duty and without restrictions, Plaintiff cannot prove that

Wyckoff was on notice that she had a "disability."  Thus, her claims of disability discrimination

and failure to accommodate fail as a matter of law. [3]

### C.  The Failure to Accommodate Claims Should Be Dismissed As Plaintiff Never Requested An Accommodation

Ms. Francis also admits that she never requested an accommodation for her alleged

"disability".  Plaintiff testified that she:

- never told anyone that she needed an accommodation, (56.1 ¶ 126);

- never told Ms. O'Hagan that she was disabled, (*id.* ¶ 122);

- never asked for a light duty assignment, (*id.* ¶ 130);

- never told Ms. O'Hagan or any other supervisor, manager or anyone in Human Resources that there were symptoms of breast cancer preventing her from doing her job, (*id.* ¶ 124);

- never told Ms. O'Hagan that she had trouble lifting or pushing patients, (*id.* ¶ 133);

- never told any supervisors that she needed certain days off or a special schedule, (*id.* ¶ 128);

---

[3] Separate and apart from the fact that Wyckoff was not on "notice" of an actual disability, the undisputed record also casts doubt on whether any disability actually exists.  It is undisputed that Plaintiff held a second job as a personal caretaker for an elderly couple, and was able to carry out daily activities such as doing her own food shopping, housecleaning, cooking, and dressing.  (56.1 ¶¶ 140-43, 222-23.)

- never told any manager or supervisor that working two or three consecutive days was going to cause symptoms such as swelling in her shoulder, (*id.* ¶ 129);

- never told anyone in Wyckoff management about her arm swelling, (*id.* ¶¶ 123, 124, 127);

- never told anyone in Wyckoff management that she wanted to go part time, (*id.* ¶ 12); and

- never told anyone at Wyckoff that she wanted a different position (*id.* ¶ 12).

Courts have routinely dismissed failure to accommodate claims, where the plaintiff could not prove that she has requested an accommodation. *See Rivera v. Apple Indus. Corp.,* 148 F. Supp. 2d 202, 215 (E.D.N.Y. 2001) (rejecting accommodation claim as a matter of law where no request was ever posed to employer); *Mazza v. Bratton,* 108 F. Supp. 2d 167, 176 (E.D.N.Y. 2000) (a failure to accommodate claim "is not made out under the ADA unless the employee's request for a reasonable accommodation has been denied by the employer."); *Vazquez v. Southside United Hous. Dev. Fund Corp.*, No. 06-CV-5997, 2009 WL 2596490, at *11 (E.D.N.Y. Aug. 21, 2009) ("[s]ince no accommodation was requested, Plaintiff cannot claim that she was denied reasonable accommodations for her disability."); *Gaston v. Bellingrath Gardens Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).  Thus, Ms. Francis' failure to accommodate claim should be dismissed.

### D.   The Claim of Unlawful Termination Must Fail, As Plaintiff Could Not Perform An Essential Function of Her Job

#### 1.   Regular Attendance Was an Essential Function for a Wyckoff EDT

Ms. Francis was an EDT, on the night shift, in Wyckoff's busy Emergency Department.  Her physical presence at work was necessary, and regular attendance was an essential requirement of the job.  Wyckoff's job description for an EDT specifies that "[r]eport[ing] to work on time and as scheduled" as one of the essential requirements for the position.  (56.1 ¶ 92, 93,

100, 104; Exh. 29, 30, 37, 40.)  Wyckoff's Employee Handbook also states that the hospital

"depends on you to report to work on time and prepared to assume your duties."  (*Id.* ¶ 51; Exh. 16

at WHMC 01752.)  Plaintiff admitted that she was aware that she was supposed to report to work

on time, and call her supervisor when she would not be in.  (*Id.* ¶¶ 56, 58.)

We submit there should be no dispute that attendance was an essential function of

the EDT job.  *See Samper v. Providence St. Vincent Med. Center*, 675 F.3d 1233, 1238 (9th Cir.

2012); *Amato v. St. Lukes Episcopal Hosp.*, 987 F. Supp. 523, 531-32 (S.D. Tex. 1997).  In

deciding what functions are essential, the Second Circuit has stated, '[a] court must give

considerable deference to an employer's judgment regarding what functions are essential for

service in a particular position'"  *Shannon*, 332 F.3d at 100; *see also* 29 C.F.R. § 1630.2(n) (listing,

*inter alia*, the employer's judgment as evidence of "essential" duties).  The same rule applies under

the NYSHRL and NYCHRL.  *Ryan v. Best Buy Co.*, No. 06-CV-157S, 2009 WL 3165584, at *5

(W.D.N.Y. Sept. 27, 2009) (dismissing claims under NYHC where plaintiff could not show she

was "otherwise qualified" and attendance was an essential function of the job); *Romanello v.

Shiseido Cosmetics*, No. 00-CV-7201 (JGK), 2002 WL 31190169, at *9 (S.D.N.Y. Sept. 30, 2002)

(NYCHRL).

It is also undisputed that Ms. Francis had a pattern of excessive absences.  In 2011

alone, Plaintiff disappeared for two months.  (56.1 ¶¶ 150-171.)  These absences were in violation

of Wyckoff's policies.  As such, Plaintiff admits that she was unable to fulfill one of the essential

functions of her job as an EDT and was therefore unqualified for her position.  *See Amato*, 987 F.

Supp. at 530 ("eight unscheduled absences in 1991, eight unscheduled absences in 1992, seven

unscheduled absences in 1993 and four unscheduled absences in 1994" were evidence that nursing

care assistant could not perform essential function of job attendance); *see Lewis v. New York City*

*Police Dep't*, 908 F. Supp. 2d 313, 328 (S.D.N.Y. 2012) (dismissing ADA claim where Plaintiff's "absences make her incompetent to perform her work duties because she is not there to perform them and because it forces [Defendant] to use other employees the [Plaintiff] would have done if present.").

The fact that Plaintiff now claims that she was absent because of her undisclosed "disability" does not save her Complaint from dismissal. Even a "disabled" employee must perform the essential functions of their job, and showing up for work on a regular basis was an essential requirement of the EDT job at Wyckoff. *Pierce v. Highland Falls-Fort Montgomery Central Sch. Dist.*, No. 08-CIV-1948 (RKE), 2011 WL 4526520, at \*5 (S.D.N.Y. Sept. 28, 2011) (plaintiff's "persistent absence from work, alone, precludes him from being considered qualified under the ADA" even assuming that plaintiff's absences were the result of a disability.)

The Second Circuit has held that regular, predictable attendance is an essential function of almost every job. *See Vandenbroek v. PSEG Power, CT LLC*, 356 F. App'x 457, 460 (2d Cir. 2009) (noting that "regularly attending work is an essential function of virtually every job.").[4] "Likewise, the ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." *Lewis v. New York City Police Dep't*, 908 F. Supp.2d 313, 327 (S.D.N.Y. 2012) (*quoting Mescall v. Marra*, 49 F.Supp.2d 365, 374 n. 18 (S.D.N.Y. 1999).

Regular attendance is particularly critical for hospital employees, whose job involves direct patient care. In *Samper*, the court found that plaintiff, a NICU nurse, could not

---

[4] The Second Circuit has also held that the question of whether "on-time" attendance is an essential function depends on whether an employee's physical presence in the workplace is in fact necessary. For instance, the court questioned that it may not be in the case of an employee who can complete tasks unsupervised from a home office. *McMillan v. City of New York*, 711 F.3d 120, 126, n. 3 (2d Cir. 2013). However, this is not the case for Ms. Francis because as an EDT, she must be present at the hospital to conduct her job duties and cannot complete those duties while she is absent.

perform the essential function of her job, because she could not maintain regular attendance.  675 F.3d at 1235.  The court held that plaintiff's job "unites the trinity of requirements that regular on-site presence necessary for regular performance:  teamwork, face-to-face interaction with patients and their families, and working with medical equipment."  *Id.* at 1238.  Plaintiff's "regular, predictable presence to perform specialized, life-saving work  in a hospital context was even *more* essential" than in other cases.  *Id.* (emphasis in original).  *See also Amato*, 987 F.Supp. at 530-32, (S.D.Tex. 1997) (nursing care assistant could not perform essential function of attendance at hospital).

As in *Samper*, as an EDT, Ms. Francis was part of a team that was needed to provide emergency health care.  Her attendance was essential to the smooth functioning of Wyckoff's Emergency Department.  Ms. Francis admits that Wyckoff's ED often treated patients that were very sick, had heart attacks, had strokes, were injured in car accidents and were victims of shootings and stabbings.  (56.1 ¶ 69.)  Her responsibilities as an EDT were serious:  drawing blood, checking vital signs, transporting patients, doing CPR for cardiac arrests, monitoring of psychiatric patients, and maintaining electronic medical records.  (*Id.* ¶ 67.)  Emergency situations often materialize without warning, such as when a gunshot victim is dropped off by a car or a baby is being delivered in the front door area.  (*Id.* ¶ 68.)  EDTs, like Ms. Francis, need to be physically present at work to provide care as quickly as possible to these emergency patients.  (*Id.* ¶¶ 67-69, 72, 92, 93, 100.)  In such a situation, attendance is <u>even more essential</u> than in other job environments.  *See Samper*, 675 F.3d at 1238; *Guice-Mills v. Derwinski*, 772 F. Supp. 188, 199 (S.D.N.Y. 1991) (where plaintiff nurse at Veterans Administration hospital was unable to report to work prior to 10:00 A.M.," due to "depression and sedating medication," she was not "otherwise qualified" for the position of Head Nurse.").

In sum, Ms. Francis cannot show that she could perform an essential function of her EDT position – which was to maintain regular attendance.  On this basis alone, Plaintiff's Federal, State and City Law discrimination claims should be dismissed.  *See, e.g., Sirota*, 283 A.D.2d at 370 (granting summary judgment for defendant dismissal of disability discrimination claim by teacher with cancer where "chronic absenteeism, tardiness and unsatisfactory performance evaluations establish she was unable to perform the essential functions of her job.").

### 2. Accommodating Ms. Francis By Allowing Unlimited Absences Was Not Reasonable And Would Cause Undue Hardship

Since Ms. Francis never asked for an accommodation, the Court need not reach the question of whether there was an accommodation which was reasonable or would not have caused Wyckoff an undue hardship.  However, should the Court reach this issue, Ms. Francis could not have been reasonably accommodated.  Plaintiff may allege the Hospital should have allowed her to take unlimited, unscheduled sick days.  This is not a "reasonable" accommodation, and thus, Plaintiff cannot not make a *prima facie* case. *Alston v. Microsoft Corp.,* 852 F. Supp. 2d 725, 733 (S.D.N.Y. 2012) ("reasonable" accommodation is element of *prima face* case).  Moreover, any such "accommodation" would be an undue hardship on Wyckoff.  *See id.* (dismissing failure to accommodate claim where "requiring Microsoft to extend an indefinite leave of absence to plaintiff is an undue hardship.").

To require Wyckoff to allow Plaintiff to take an unlimited, unscheduled number of absences would involve the "elimination of an essential job function" and thus, would not be reasonable as a matter of law.  *Hunt-Watts v. Nassau Health Care Corp*., No. 12-CV-1815 (PKC), 2014 WL 4185149, at *12 (E.D.N.Y. Aug. 21, 2014).  *See also Shannon*, 332 F.3d at 100 ("A reasonable accommodation can never involve the elimination of an essential function of a job.") (*quoting Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991)); *Feeley v. New York City Police*

*Dep't*, No. 97-CV-02891-RJD, 2001 WL 34835239, at *9 (E.D.N.Y. Sept. 4, 2001) (holding that it would be unreasonable to require a police department to continue a restricted duty schedule, as this would constitute require the elimination of an essential functions).[5]

It is undisputed that Ms. Francis had a pattern of taking far more "sick days", in excess of those allowed under the CBA and Wyckoff's Attendance Policy. (56.1 ¶¶ 91-94, 96-101, 104-105, 167, 183, 198, 216.) To require Wyckoff to accommodate this pattern would eliminate an essential function of Ms. Francis' job – that she be present at work. (*Id.* ¶¶ 67-69, 72, 92, 93, 100.) The law does not require an employer to provide such an "accommodation."

Second, allowing unlimited absences would cause an undue hardship on Wyckoff. An "undue hardship" under the ADA is "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). The factors to be considered in determining whether an accommodation would impose an undue hardship include:

> (i) the nature and cost of the accommodation needed under this chapter;

> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

---

[5] The result is the same under the NYCHRL which provides that if the plaintiff could not "satisfy his essential requisites of the job" with an accommodation, an employer is not liable under a failure to accommodate claim. *Romanello v. Intesa Sanpaolo, S.p.A*, 976 N.Y.S.2d 426, 429 (Ct. App. N.Y. 2013) (*citing* N.Y.C. Admin. Code § 8-107[15][b]).

42 U.S.C. § 12111(B)(i)-(iv).

Allowing Ms. Francis to take an unlimited number of unscheduled absences – essentially to appear for work only when she felt like it – would unduly burden a non-profit hospital like Wyckoff to stretch an already tight budget. (56.1 ¶¶ 73, 76-80.)  When it could, Wyckoff had to pay overtime to another employee when Ms. Francis called out sick.  (56.1 ¶¶ 79, 147, 194.)  Wyckoff also had a difficult time getting technicians from other areas of the hospital to "float" to the Emergency Department to cover for an EDT who was out, as the Emergency Department was a highly specialized area with specific protocols.  (*Id.* ¶ 75.)  Ms. O'Hagan often received calls from her managers that employees could not be replaced and the Emergency Department would have to "work short," which was a safety issue.  (*Id.* ¶ 80.)  This was especially difficult on the night shift, where Ms. Francis worked, because gunshots and sexual assaults often come in at night.  (*Id.* ¶¶ 72, 77.)

Allowing unscheduled absences beyond those allowed by the CBA and policies presented an undue hardship that the law does not require Wyckoff to bear.  In *Amato*, the plaintiff was a nursing care assistant who sought the accommodation of "leave flexibility."  987 F. Supp. at 530.  The court held that this was an undue burden for the hospital employer, because it "essentially require[d] the hospital to retain and compensate a surplus of employees on Amato's scheduled work days to be available in the event he fails to report for work."  *Id.* at 531.  As the court found, "[a]ltering an employer's general practice of requiring regular attendance would be unduly burdensome for most employers, but is especially onerous for a hospital where the predictability of a certain level of staff is essential for proper patient care."  *Id.* at 531-32; *see also Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994) (where plaintiff sought to trade work days with coworkers to miss work for an arthritis condition, this was an undue burden on the

employer who would be required to make "last-minute provisions for [the plaintiff's] work to be done by someone else"); *Guice-Mills*, 772 F. Supp. at 199 (Plaintiff nurse's "requested accommodation, *i.e.*, tour of duty commencing at 10:00 A.M., if granted, would have imposed an 'unreasonable' administrative burden on Hospital," because it would require that defendant assign some of plaintiff's responsibilities prior to 10:00 A.M. to a nurse on an adjoining ward or different floor); *Alston*, 851 F. Supp.2d at 733-34 (indefinite leave was an undue burden).

**E.     Alternatively, Plaintiff  Cannot Show That She Was Terminated "Because of " Her Disability**

> **1.     Ms. Francis' Termination Did Not Occur Under Circumstances Giving Rise to an Inference of Discrimination**

Even if Ms. Francis could prove that she was able to perform the essential functions of her position, she still cannot show that her termination occurred under circumstances that give rise to an inference of discrimination.  "[A] plaintiff cannot simply rely on the fact that he was terminated" in order to make out a claim of disability discrimination.  *Lama v. Consol. Edison Co.*, No. 98-CV-5084 (VG), 1999 U.S. Dist. LEXIS 16966, at *6-7 (E.D.N.Y. Oct. 18, 1999). Conclusory and speculative allegations by plaintiffs are insufficient to satisfy this burden.  *Ali v. Mount Sinai Hosp.*, No. 92 Civ. 6129 (JGK)(NG), 1996 U.S. Dist. LEXIS 8079, at *22–23 (S.D.N.Y. June 12, 1996) ("It is not enough that [plaintiff] sincerely believes that she was the subject of discrimination; [a] plaintiff is not entitled to a trial based on pure speculation, no matter how earnestly held.") (internal quotations omitted).

Proof of such inference may include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, [or] preferential treatment given to employees outside the protected class."  *Williams v. Palladia, Inc.*, No. 07-CV-7720 (CM), 2009 U.S. Dist. LEXIS 15516, at *20 (S.D.N.Y. Feb. 10, 2009) (*quoting Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).  No such proof exists here.

Plaintiff admits that no one at Wyckoff, including Defendant Betty O'Hagan, ever made <u>any</u> discriminatory or negative remarks about her cancer or any alleged "disabilities."[6]  (56.1 ¶ 125.)  Thus, the only way Ms. Francis can prove an inference of discrimination is by presenting evidence that preferential treatment was given to those outside the protected class of "disabled employees."  In other words, Plaintiff would have to prove that other "non-disabled" employees, with an attendance record as bad as her, were treated better than she.  "To prove that the employer subjected a plaintiff to disparate treatment . . . the plaintiff must show she was similarly situated in all material respects to the individuals with whom [she] seeks to compare [her]self."  *Desir v. Bd. of Coop. Educ. Servs. (BOCES)*, No. 07-CV-1994 (RRM) (ARL), 2011 U.S. Dist. LEXIS 32751, at *31 (E.D.N.Y. Mar. 29, 2011) (internal quotations omitted); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) ("In order for employees to be 'similarly situated' for the purposes of establishing a plaintiff's prima facie case, they 'must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's . . . .'") (*quoting Mazzella v. RCA Global Communications*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d. Cir. 1987)).

There is no evidence of any similarly situated employee who was treated more favorably than Ms. Francis.  Also and contrary to the Complaint, Ms. Francis had a long history of chronic attendance warnings that began well before Ms. O'Hagan started at Wyckoff.  She was given multiple poor performance reviews, and was warned and suspended <u>14 separate times</u> between 2003 and 2011. (56.1 ¶¶ 91-94, 96-101, 104-105, 137-138, 145, 175, 185, 200.)  Ms.

---

[6] It is undisputed that Ms. Francis and Ms. O'Hagan never spoke about Ms. Francis' cancer, and there is no evidence that anyone at Wyckoff said anything negative about Ms. Francis' history of cancer, including Ms. O'Hagan, Human Resources, or anyone in nursing management.  (56.1 ¶¶ 121, 125.)

Francis' absences were extraordinary.  Ms. Francis admitted that, in general, she called in sick up to ten times a month.  (*Id.* ¶ 6.)

During the spring of 2011, Ms. Francis took an unauthorized leave and was a no-call/no-show for a stunning 41 out of 70 shifts.  (56.1 ¶¶ 152-155, 157, 161-63, 167, 168.)  When she returned from this unapproved "leave" in May 2011, Plaintiff was only given <u>a warning</u>, even though her conduct was grounds for immediate termination.  (*Id.* ¶¶ 53, 175.)  In June 2011, Plaintiff was warned and suspended again.  (*Id.* ¶ 185.) After that suspension, Plaintiff still was late and absent from work.[7]  (*Id.* ¶ 198.)  During this time, Ms. Francis never told Wyckoff the absences were due to any "disability" nor did she  request any accommodation.  (*Id.* ¶¶ 173, 174.)

There is no evidence Ms. O'Hagan treated Ms. Francis more harshly than prior managers, or any other employee with attendance and performance problems that rose to the same level as Ms. Francis.  (56.1 ¶¶ 6-8.)  Ms. Johnson, Plaintiff's union representative, testified that Ms. Francis was absent more than any other union employees who were terminated for time and attendance.  (*Id.* ¶ 7.)  In sum, Ms. Francis simply cannot prove that she was singled out because of her alleged disabilities.

### 2.      Wyckoff Had a Legitimate, Non-Discriminatory Reason for Terminating Ms. Francis

Even assuming that Ms. Francis has established a *prima facie* case, which she cannot, Wyckoff has articulated legitimate business reasons for Ms. Francis' termination, namely her chronic poor attendance.  Wyckoff's burden at this stage is "one of production, not persuasion."  *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142 (2000).  Further, a court's examination does not involve a credibility assessment of the evidence.  *St. Mary's Honor Ctr. v.*

---

[7] Notably, on two of the days Plaintiff was absent from Wyckoff in July 2011 – Plaintiff worked at her (secret) second job. (56.1 ¶ 199.)

*Hicks*, 509 U.S. at 502, 509 (1993). As the Second Circuit explained in *McPherson v. New York City Dep't of Educ.*, "[i]n a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *motivated* the employer; the factual validity of the underlying imputation against the employee is not at issue." 457 F.3d 211, 216 (2d Cir. 2006) (emphasis in original, internal citations omitted); *see also Mincey v. Univ. of Rochester*, 262 Fed. Appx. 319, 321-22 (2d Cir. 2008); *Ozemebhoya v. Edison Parking Corp.*, No. 02-cv-10057, 2007 U.S. Dist. LEXIS 66552, at *21 (S.D.N.Y. Sept. 7, 2007).

It is undisputed that Ms. Francis was excessively absent from work, in violation of Wyckoff's Attendance Policy. (56.1 ¶¶ 6-8, 167, 183, 184, 198.) As a direct result, Plaintiff was progressively disciplined pursuant to Wyckoff's Attendance Policy and warned that she faced termination. (*Id.* ¶¶ 175, 176, 185, 200; Exhs. 8, 11, 21.) Even after her final June 2011 suspension, Ms. Francis continued to miss work. On June 28, 2011, Ms. Francis left work without swiping out. (*Id.* ¶¶ 190-92.) When she returned on July 5th, she submitted a doctor's note stating that she would be able to return to work with "full duty no restrictions." (*Id.* ¶ 195; Exh. 69.) Ms. Francis called out sick again on July 9 and 10. (*Id.* ¶ 198.) On both of those dates, Ms. Francis worked at her second job for the Kartons. (*Id.* ¶ 199.) Ms. Francis was terminated on July 15, 2011 as a result of these absences. (*Id.* ¶ 200; Exh. 8.)[8]

The caselaw is clear that lateness, frequent absences, poor performance and unsatisfactory ratings on evaluations are legitimate, non-discriminatory reasons for a plaintiff's termination. *See e.g., Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 209 (E.D.N.Y. 2009); *Edwards v. Elmhurst Hosp. Ctr.*, No. 07-CV-2452 (RMB) (LB), 2009 WL 6683365, at *7 (E.D.N.Y. Sept.

---

[8] It is undisputed that Plaintiff's missed swipe during her fibroids episode on June 28, 2011 was unrelated to her breast cancer diagnosis. Plaintiff testified herself that the fibroids were unrelated to her cancer and the evidence is undisputed that there were multiple time-clocks that Ms. Francis could have used to swipe out upon leaving the hospital. (56.1 ¶¶ 190, 192, 193.) Put simply, there is no evidence that anything prevented her from swiping out that day.

17, 2009) (plaintiff's "excessive absences and lateness" constituted a legitimate, non-discriminatory reason for changing plaintiff's employment status); *Jones v. Yonkers Public Schools*, 326 F. Supp. 2d 536, 543–44 (S.D.N.Y. 2004); *Gomez v. Pellicone*, 986 F. Supp. 220, 228-29 (S.D.N.Y. 1997). Thus, Wyckoff has met its burden to show a legitimate basis for Plaintiff's termination.

### 3.     There is No Evidence of Pretext

Ms. Francis cannot produce sufficient evidence to establish that the legitimate reasons proffered by Defendants were a pretext for disability discrimination. At this stage, Ms. Francis must do more than prove that Defendants' reason for her termination were false – she must also prove that the "false" reason was intended to mask intentional discrimination. *See Costello v. St. Francis Hosp.*, 258 F. Supp. 2d 144, 155-56 (E.D.N.Y. 2003); *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

As discussed in Point E(1), Plaintiff cannot prove that the reasons for her termination were "false", as she does not dispute that she was absent on many occasions in 2010 and 2011. (56.1 ¶¶ 6, 216.) Plaintiff also does not dispute that she received progressive discipline and was warned that continued poor attendance could lead to her discharge. (*Id.* ¶¶ 175, 176, 185, 200; Exhs. 8, 11, 21.)

There is likewise no evidence of disability bias. Neither Ms. O'Hagan or any of the decision makers ever made any negative comment about Plaintiff's "disability." (56.1 ¶ 125.) Further, there is also no evidence of any disparate treatment, or that Ms. Francis was treated more harshly than other EDTs. (*Id.* ¶¶ 6-8, 167.) Indeed, given her terrible attendance record, Ms. Francis could have been terminated sooner than she was. In sum, Ms. Francis cannot show any evidence of a pretext.

III.   **THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OF THE NYSHRL AND NYCHRL CLAIMS**

      As argued above, Ms. Francis' claims under the ADA, NYSHRL, and NYCHRL fail on their merits.  However, should this Court dismiss the ADA claims, it may also decline to exercise jurisdiction over the NYSHRL and NYCHRL claims.  It is entirely appropriate for a federal court to decline to exercise supplemental jurisdiction over state and city law claims.  "The district court may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by New York state and municipal law is a question best left to the courts of the State of New York." *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001).  There is a growing trend within this District Court to decline jurisdiction over state law claims in other state/federal mixed claim cases.  *See, e.g., McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011).

IV.   **THE AFTER-ACQUIRED EVIDENCE DOCTRINE BARS MS. FRANCIS FROM OBTAINING FRONT PAY, REINSTATEMENT, AND BACK PAY**

      It is settled that "[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, [Courts] cannot require the employer to ignore the information, even it is acquired during the course of discovery in a suit against the employer…." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361-62 (1995) (holding that where after acquired evidence would have led to termination, "neither reinstatement nor front pay is an appropriate remedy" and back pay should be calculated "from the date of the unlawful discharge to the date the new information was discovered"); *see also Greene v. Coach*, 218 F. Supp. 2d 404, 412-14 (S.D.N.Y. 2002) (applying after-acquired evidence rule to bar remedies available to employee who falsified employment application).

Had Wyckoff known that Ms. Francis lied on the 2009 leave documents about receiving chemotherapy, it would have terminated her.  (56.1 ¶¶ 107-20; Exhs. 16, 42, 43; Foti Decl. ¶¶ 13-16.)  Misrepresentations of medical information just like Ms. Francis' have been held to be a legitimate non-discriminatory reason for discharge.  *O'Reilly v. Consolidated Edison Co. of New York*, 173 Fed. Appx. 20, 22-23 (2d Cir. 2006).  Her misrepresentation is a clear violation of the FMLA's regulations, which state that "an employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration …provisions."  29 C.F.R. § 825.216.

Additionally, Wyckoff was unaware that Ms. Francis was working at a second job while on "leave" and reported for work to that job on days that she called out sick from Wyckoff.  (56.1 ¶¶ 146-149, 172, 199.)  Falsely calling out "sick," when an employee working at another job, is dishonest behavior and thus is a violation of Wyckoff's policies.  (*Id.* ¶ 50; Exh. 16 at WHMC 01750; Foti Decl. ¶ 20.)  In short, such dishonesty is a serious offense and is grounds for termination.  The after-acquired evidence doctrine bars much of Ms. Francis' claimed relief.

<u>**CONCLUSION**</u>

Defendants respectfully request that the Court grant their motion for summary judgment in its entirety and dismiss Ms. Francis' Complaint as a matter of law, and order such further relief as the Court deems just and proper.

KELLEY DRYE & WARREN LLP

Date:   December 8, 2014
        New York, New York

By:*/s/ Barbara E. Hoey*_____
Barbara E. Hoey
Alison L. MacGregor
101 Park Avenue
New York, NY 10178
Phone: (212) 808-7800
Facsimile: (212) 808-7897
bhoey@kelleydrye.com

*Attorneys for Defendants*